# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6796 | **DATE** | 3/15/2001 |
| **CASE TITLE** | BAY STATE MILLING CO. vs. JUNE MARTIN | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: the Court grants the Bay State Milling Company's motion for summary judgment as to June Martin's liability under the Uniform Fraudulent Transfer Act but denies summary judgment as to the encumbered value of the property at issue [9-1]. Status hearing set for 4/4/01 at 9:30a.m.
(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 16 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 17 |
| | Copy to judge/magistrate judge. | | | |
| TBK courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BAY STATE MILLING COMPANY,

    Plaintiff,

v.

JUNE MARTIN,

    Defendant.

Judge Ronald A. Guzman

99 C 6796

## MEMORANDUM OPINION AND ORDER

The facts of this case involve an alleged violation of the Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS § 160/1, by the defendant, June Martin ("Defendant"). Plaintiff, Bay State Milling Company ("Bay State"), has sued June Martin claiming that a transfer of property to her from her daughters constituted an actual and a constructive fraudulent transfer of a property in violation of the UFTA. Plaintiff has moved for summary judgment. For the reasons provided in this Memorandum Opinion and Order, plaintiff's motion is granted as to the defendant's liability for fraudulent transfer but denied as to the damages sought.

## FACTS

The court makes its findings of undisputed facts pursuant to Local Rule 56.1. Plaintiff, Bay State, is a Minnesota corporation with its principal place of business in Quincy, Massachusetts (Statement ¶ 1.) Defendant, June Martin is a citizen of Illinois and the mother of Diana Franchi and Betty Lou Doty, the mother-in-law of Gary Franchi and Jay Doty and the wife of William Martin, Sr. (*Id.* ¶ 2.)

1

In 1994, Bay State filed an action against Diane Franchi, Betty Lou Doty and their spouses to avoid William Martin, Sr.'s transfer of a lottery ticket and its proceeds as actual and constructive fraudulent transfers ("Fraudulent Transfer Action") (*Id.* ¶ 6.) During the pendency of this litigation, on or about October 29, 1995, Diana Franchi and Betty Lou Doty transferred their interest in certain real property at 1040 Techny Road, Northbrook, Illinois ("Property") to June Martin for no consideration (*Id.* ¶¶ 6,5.)

On or about December 15, 1995 June Martin refinanced the existing mortgage of $80,364.00 on the Property with a new mortgage of $213,500.00 which represented a loan value ratio of 70% giving the Property a value of $305,00.00 on this date (*Id.* ¶ 7.) She received $133,136.00 from the refinancing (*Id.*) In addition to the mortgage, the defendant had liens on the Property (Reply ¶ 11.)

On September 30, 1999, the district court entered a corrected Judgment in the Fraudulent Transfer Action in favor of Bay State for $200,000.00 (Statement ¶ 8.) On July 13, 1999, Diana Franchi filed a voluntary petition under Chapter 7 of the Bankruptcy Code and in September 2000 Betty Lou Doty produced financial records in a citation proceeding in the Fraudulent Transfer Action reflecting that she was insolvent at the time of the transfer (*Id..* ¶¶ 14,15.) June Martin claims that the property had little value and therefore did not affect her daughters' solvency (Reply ¶ 9.)

On October 29, 1999 June Martin sold the Property for $284,000.00 (Statement ¶ 11.) From the sale of the Property, June Martin paid off her first mortgage loan in the amount of $207,670.43, received earnest money of $4,000.00 principal and reductions per the agreement of $1,492.79, a purchase money junior mortgage in the amount of $18,000.00 and cash in the amount of $51,450.43 (*Id.* ¶¶ 12,13.)

## JURISDICTION

Federal Jurisdiction is based upon 28 U.S.C. § 1334, as the controversy involves a dispute between citizens in different states and the amount in controversy exceeds $75,000.00.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Material facts must be assessed in "order to resolve the substantive issue that is the subject of the motion." *In re Miller*, 175 B.R. 969, 974 (Bankr. N.D. Ill. 1994). Pursuant to Local Rule 56.1, "all material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the [reply] statement of the opposing party." *Id.* at 973. Any material fact set forth movant's statement, not controverted, is also deemed admitted. *Id.* Although the court must draw reasonable inferences from the underlying facts in the light most favorable to the non-moving party, where those facts make the outcome clear as a matter of law, summary judgment is appropriate. *Id.* at 974.

### I. LIABILITY UNDER THE UNIFORM FRAUDULENT TRANSFER ACT

The Uniform Fraudulent Transfer Act indicates two types of fraudulent transfers, actual fraud and constructive fraud. 740 ILCS § 160; *In re Martin*, 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992). Actual fraud or "fraud-in-fact" results where the "debtor transfers property with the intent to hinder, delay, or defraud his creditors." *Id.* While constructive fraud or "fraud-in-law" "occurs when (1) a voluntary gift is made, (2) there

is an existing or contemplated indebtedness against the debtor, and (3) the debtor has failed to retain sufficient property to pay the indebtedness." *Id.*

### A. Actual Fraud

Since actual fraud will not be presumed under Illinois law, the movant must prove all elements of actual fraud by clear and convincing evidence. *Hoffmann v. Hoffmann*, 94 Ill.2d 205, 225 (1983). Therefore, Bay State must show that it is highly probable that June Martin's daughters transferred the property in question to her with an actual intent to hinder, delay or defraud creditors. *In re Martin*, 145 B.R. at 946.

In determining whether a transfer was made with the actual intent to defraud, it is irrelevant whether the obligation to the creditor arose before or after the transfer. *In re Mussa*, 215 B.R. 158, 167 (Bankr. N.D. Ill. 1997). Various factors are helpful considerations in determining actual intent to defraud. *Id.* at 168. These "badges of fraud" include whether: [1] the transfer or obligation was to an insider; [2] before the transfer was made, the debtor had been sued; [3] the debtor was insolvent or became insolvent shortly after the transfer was made; and [4] the transfer occurred before a substantial debt was incurred. *Id.* "When the badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud" and the creditor may prove actual intent. *Id.*

First, the transfer of the property was to an insider. A relative includes "an individual related by consanguinity within the third degree." 740 ILCS § 160/2 (k). Since under UFTA an insider of a debtor includes relatives, the transfer in question satisfies this first statutory indicator of fraud because June Martin is the mother of Diana June Franchi and Betty Lou Doty (Statement ¶ 2.) 740 ILCS § 160/2 (g)(1)(A). A

transfer between family members is weighty proof of [fraudulent] intent." *In re Mussa*, 215 B.R. at 168.

Second, the debtor had been sued before the transfer was made. Bay State filed an action against Diane Franchi, Betty Lou Doty and their spouses to avoid William Martin, Sr.'s transfers of a lottery ticket and its proceeds as actual and constructive fraudulent transfers (Statement ¶ 6.) Thus, the debtors were aware of the suit in 1994, prior to the October 29, 1995 transfer of the property to their mother, constituting another badge of fraud (*Id.*)

Third, the debtors, by their own admission, were either insolvent or became insolvent as a result of the transfer. On July 13, 1999 Diana Franchi a voluntary petition under Chapter 7 of the Bankruptcy Code and Betty Lou Doty produced financial records in September 2000 reflecting that she was insolvent at the time of the transfer (*Id.* ¶¶ 14,15.) Defendant claims that the property had little value and therefore did not affect her daughters' solvency (Reply ¶ 9.) This statement is inconsistent with the value of the property assessed on the refinancing date merely six weeks after the transfer at issue. The $305,000.00 valuation reflects that the property could have helped the daughters remain solvent in satisfying a portion of their ultimate debt to Bay State (Statement ¶ 7.)

Finally, the transfer occurred before substantial debt was incurred. On September 30, 1999, the district court entered a corrected Judgment in the Fraudulent Transfer Action in favor of Bay State against Diane Franchi and Betty Lou Doty for $200,000.00 (*Id.* ¶ 8.)

Thus four of the statutory badges of fraud are present. Considering the weight that transfer to an insider carries in fraudulent conveyance cases, fraudulent intent may

be presumed. Bay State has demonstrated fraud in fact with regard to the daughters' transfer of the property to their mother. Bay State has shown by clear and convincing undisputed evidence that Diane Franchi and Betty Lou Doty transferred the property to June Martin with the intent to hinder and delay creditors.

B. **Constructive Fraud**

Bay State must also prove all of the elements of constructive fraud. *In re Martin*, 145 B.R. at 946. The necessary elements of constructive fraud or "fraud-in-law" are that "(1) a voluntary gift is made, (2) there is an existing or contemplated indebtedness against the debtor, and (3) the debtor has failed to retain sufficient property to pay the indebtedness." *Id.* Bay State need not prove intent because intent to defraud is presumed when the elements of constructive fraud are satisfied. *Id.* Therefore, Bay State need only prove these three elements by a preponderance of the evidence. *Id.*

In this case, June Martin's daughters made a voluntary gift of the property to her. "The court must focus on what the debtor received in return for what he surrendered." *In re Mussa*, 215 B.R. at 171. On or about October 29, 1995, during the Fraudulent Transfer Action, Diane Franchi and Betty Lou Doty transferred their interest in the property to June Martin for no consideration (Statement ¶ 6.) Thus, the debtor made the transfer without receiving a reasonable value in exchange for their property.

The existence of a debt to Bay State has also been proven. Bay State was ultimately awarded $200,00.00 as a result of a Fraudulent Transfer Action against Diane Franchi and Betty Lou Doty on September 30, 1999 (*Id.* ¶ 8.) Also, the transfer of the property to the defendant occurred on October 29, 1995 while the Fraudulent Transfer

Action was filed in 1994 (*Id.* ¶ 6.) Therefore, Diane Franchi and Betty Lou Doty became debtors to Bay State as a result of litigation that ensued prior to the transfer at issue.

Finally, it is undisputed that the debtors have failed to retain sufficient property to pay the indebtedness. "Insolvency occurs where the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." *In re Mussa*, 215 B.R. at 172. Again, since Diane Franchi filed a voluntary petition under Chapter 7 and Betty Lou Doty produced financial records reflecting insolvency, they were either insolvent at the time of the transfer or became insolvent as a result of the transfer (Statement ¶¶ 14,15.) Therefore, the elements of constructive fraud or "fraud-in-law" have been satisfied and it can only be concluded that Bay State's rights as creditor were impaired.

The failure of the defendant to controvert these material facts renders summary judgment proper. Bay Sate is entitled to summary judgment as to liability because the transfer of the property from her daughters to June Martin satisfies the elements of constructive fraud.

## II. DAMAGES FOR VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT

When a conveyance is deemed void because it was fraudulent, "a creditor may set aside the transfer and may elect to recover either the property itself or its cash value in satisfaction of the debt." *United States v. Brown*, 820 F.Supp. 374, 382 (N.D. Ill. 1993). The wrongdoer "will be held to account for any money received on its sale." *Id.* at 384.

Bay State correctly asserts that it is entitled to the value of the property at the time of the fraudulent conveyance. The defendant's refinancing of the property just six weeks after the illegal act serves as the most appropriate time for assessing the value of the unencumbered property at $305,000.00 (Statement ¶ 7.) Regardless of the property's

unencumbered value, Bay State has failed to reflect the basis for its entitlement to $101,666.00. June Martin has raised the possibility of encumbrances existing on the property that would effect any right to recovery that have not been addressed by the plaintiff (Reply ¶ 11.) Also, June Martin only realized $51,450.43 upon the sale of the property to a bona fide purchaser (Statement ¶ 13.) Therefore, as to the valuation of the property, questions of material fact remain concerning the priority of other creditors at the time of the transfer.

## CONCLUSION

For the foregoing reasons, the Court grants the Bay State Milling Company's motion for summary judgement as to June Martin's liability under the Uniform Fraudulent Transfer Act but denies summary judgement as to the encumbered value of the property at issue (# 9-1).

**SO ORDERED**

ENTERED: 3/14/01

HON. RONALD GUZMAN
United States Judge